[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs are the proposed buyers of a building lot in the Town of Guilford. The defendant is the seller.
On March 27 and 28, 2001, the parties executed a contract of sale for the lot for $98,500. The sale fell through and the plaintiffs have now brought this lawsuit praying for specific performance.
The matter first appeared on the court's docket as a result of the defendant's Motion to Discharge Lis Pendens. By agreement it was continued one week so that other motions could be addressed by the court as well.[1] The parties have now stipulated on the record, even in advance of any responsive pleading filed by the defendant, that there are no material issues of fact in dispute and that judgment — one way or the other — can enter as a matter of law. They have orally presented their positions to the court and have consented, without further submissions or further oral argument, to allow the court to consider the entire matter CT Page 9074 as one for summary judgment.
The parties have agreed to the submission of all relevant documents in support of their respective positions. The court has considered the following described documents and stipulations of fact:
1. The sale and purchase agreement signed by the buyers on March 27, and the seller on March 28, 2001 (two pages, plus Addendum A regarding approval of design plans);
2. The letter of April 4, 2001, from defendant to plaintiffs' agent indicating that the design plans were approved;
3. The May 11, 2001, letter from plaintiffs' counsel to defendant's counsel asking for an extension of the contract to May 18, 2001, to satisfy the financing contingency;
4. The response by fax of defendant's counsel to plaintiffs' counsel agreeing to extend the time for compliance with the financing contingency to May 18, 2001;
5. The May 17, 2001, letter from plaintiffs' counsel to defendant's counsel stating that the buyers still had not received a written mortgage commitment and asking for a further extension of the contract to May 25, 2001, to satisfy the financing contingency;
6. The lack of any written consent by the defendant to such a contract extension;
7. The May 21, 2001, letter from plaintiffs' counsel to defendant's counsel stating that his clients had now obtained a mortgage commitment; and
8. The May 23, 2001, letter from plaintiffs' counsel to defendant's counsel stating that his clients were prepared to close in five days.
As to the applicable law, there is also no dispute. The parties stipulate that this is a contract for the sale of land and is thus governed by the Statute of Frauds, Conn. Gen. Stat. § 52-550 (a), which states:
 No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property. . . . CT Page 9075
The written contract in this case appears to be one commonly in use among residential real estate agents. It contains a fill-in-the-blank paragraph to write in the terms of any financing contingency, and it contains a preprinted paragraph which governs how the financing contingency is to operate. The financing contingency was for a conventional thirty-year mortgage for $90,000 at the "prevailing rate" of interest, with the time limit for obtaining such a commitment to be "45 days from acceptance," ¶ #5e. With respect to this contingency, paragraph H of the contract applies:
 BUYER'S obligations hereunder are contingent upon BUYER obtaining a written commitment for mortgage financing in the amount specified in #5a and upon such other terms as are customary. BUYER agrees to apply for such financing immediately and to pursue such applications with diligence. If BUYER is unable to secure a commitment for such financing within the number of days specified in #5e, and fails to notify SELLER or SELLER'S Agent in writing of such inability within the time limit specified in #5e, this contingency shall be deemed satisfied and this Agreement shall continue in full force and effect. If BUYER is unable to secure a commitment for such financing within the number of days specified in #5e and notifies SELLER or SELLER'S Agent of such inability in writing within the time limit this agreement shall be null and void and any payments made hereunder shall be returned immediately to BUYER.
The final sentence of paragraph H controls this situation precisely. The buyers requested and received, in writing, the seller's consent to an extension of one week in the "number of days specified in #5e." They thereafter notified the seller in writing within the extended time frame that they had still been unable to obtain the mortgage commitment, and they attempted to obtain the seller's consent to a second such extension. The seller did not consent to such an extension. Therefore the contract became "null and void." The seller no longer had any obligation to perform under the agreement, except to return any deposits to the buyers.
The plaintiffs argue that the 45 days did begin to run until the other contingency in the contract was satisfied — the plan approval in Addendum A. But the contract does not say that. Rather the contract expressly provides that the time limit for obtaining financing runs "from acceptance," and the contract was accepted by the seller on March 28, 2001.
The plaintiffs are not entitled to specific performance. The court enters summary judgment for the defendant and orders that the notice of CT Page 9076 lis pendens be immediately discharged.
 _____________________ PATTY JENKINS PITTMAN, JUDGE